# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP S. GRINER,<br><br>　　　　Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Respondent. | Case No. CV- 10-204-N-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Philip Griner's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income payments. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On October 2, 2006, Philip Griner ("Petitioner") applied for Social Security Disability Insurance Benefits, alleging a disability onset date of September 28, 2005. (AR 15). Petitioner's claim was initially denied on January 5, 2007 and, again, denied on reconsideration on February 28, 2007. (AR 71-83). Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On June 30, 2008, ALJ R.J. Payne held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Louis Garbrecht, appeared and testified. (AR 23). A medical expert, Lew B. Myers, M.D., also appeared and testified. At the time of the

**MEMORANDUM DECISION AND ORDER - 1**

hearing, Petitioner was 42 years old and had past work as a logger and at sawmills. (AR 17, 19, 111-12). He alleged disability due to bilateral hand pain and weakness secondary to bilateral carpal tunnel surgery, and low back pain. (AR 17). He also referred to his "ADD" in disability reports, which his physician described as Attention Deficit Hyperactive Disorder ("ADHD"), and the ALJ considered as "mental problems". AR 138 (Petitioner refers to his ADD); AR 190-91 (Dr. Simpson's diagnosis as ADHD).

On August 19, 2008, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 15-22). Petitioner timely requested review from the Appeals Council on September 23, 2008. (AR 4-11). On March 26, 2010, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1-3).

Having exhausted his administrative remedies, Petitioner timely filed the instant action, requesting that the Court reverse the ALJ's decision.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). That is, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

# III. DISCUSSION

## A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA after September 28, 2005, the alleged onset date. (AR 17).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: bilateral carpal tunnel syndrome and back pain. (AR 17). The ALJ found Petitioner's ADHD was not a severe impairment.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 18). Petitioner's counsel stipulated to this determination. (AR 65).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's

past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of light work, except for limitations to frequent handling and fingering. (AR 18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ determined that Petitioner is unable perform past relevant work as a logger. (AR 20). The ALJ found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform and, therefore, found Petitioner to not be under a disability. (AR 21).

**B.     Analysis**

Petitioner alleged disability due to bilateral hand pain and weakness secondary to bilateral carpal tunnel surgery, low back pain, and ADHD. The ALJ found Petitioner had several impairments of bilateral carpal tunnel syndrome and back pain (AR 17), but found no severe mental impairments, (AR 18). Petitioner challenges the ALJ's denial of disability benefits in

four general areas, some of which overlap. Petitioner challenges the ALJ's (1) credibility finding; (2) treatment of the medical testimony; (3) residual functional capacity ("RFC") assessment; and (4) decision not to use a vocational expert at the hearing.

     1.     <u>Adverse Credibility Findings</u>

The ALJ found that Petitioner's "medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 19; *see also* AR 20). The ALJ cited to the following "inconsistencies" between Petitioner's statements and the objective medical evidence that undermined the Petitioner's credibility:

> [Petitioner] testified he could only sit for 10 minutes, but he sat driving to the hearing for 1 ½ hours, and he sat at the hearing for over 1 hour. [Petitioner] testified that he could only stand for 10 minutes, but he said he could fish for 1-2 hours. [Petitioner] testified that he had very limited daily activities, but at one point or another in the record . . . [Petitioner] has reported the following daily activities: he rakes leaves, mows the lawn, washes windows, attends church for 1 hour, uses the weed eater, and fishes. These activities of daily living are not consistent with his testimony that he could only stand 10 minutes, sit for 10 minutes, and only lift 10-12 pounds. In the Disability Questionnaire done in January 2007, [Petitioner] reported that he could walk for several miles, but he wasn't able to fish anymore. Exhibit 4E. Yet at the hearing he testified that he could only walk 1000 yards, and he fished every day. The medical evidence does not show a change in [Petitioner's] condition which would account for the increased or decreased restrictions and limitations described at the hearing. . . . Moreover, the medical evidence simply does not support the degree of limitations alleged by the claimant.

(AR 19-20; *see also* 48-49, 58-63).

**MEMORANDUM DECISION AND ORDER - 7**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Meanel*, 172 F.3d at 1113. Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 957, 958-59 (9th Cir. 2002). The ALJ here focused on Petitioner's daily activities and inconsistencies in his testimony. If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). There is sufficient evidence in the record to support the ALJ's determination that Petitioner's activities—fishing twice daily, performing outside chores, washing windows for his elderly neighbors, and attending church—were inconsistent with his

claimed limitations of an ability to stand for only ten minutes and sit for the same amount of time. AR 48, *see also* AR 58-63.

Although Petitioner points out that an agency disability examiner, Leslie Arnold, M,D., noted on review of Petitioner's symptoms that the Petitioner "is deemed generally credible," it is the ALJ's province to consider this statement along with all of the other evidence of record in making a credibility determination. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (explaining that the Commissioner is responsible for resolving conflicts in testimony and making credibility determinations). Additionally, Dr. Arnold found that Petitioner's symptoms were not "durationally severely limiting." AR 183. This statement supports the ALJ's determination that Petitioner's is not as limited by his pain and symptoms as would support a disability finding. Dr. Arnold also noted that Petitioner did not respond to "repeated" requests for additional information and Dr. Arnold did not have access to all the information of record, including Petitioner's testimony at the hearing, when commenting on Petitioner's credibility. *Id.* Thus, Dr. Arnold's statement is not sufficient to overcome the ALJ's credibility determination.

Where, as here, there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). In other words, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court reviews the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the

assessment is supported by the requisite findings and record evidence. Here, it is, and the Court will not substitute its own assessment for that of the ALJ.

    2.    <u>Medical Opinions</u>

Petitioner argues that the ALJ did not properly consider the medical evidence, in that the ALJ should have found Petitioner's ADHD to be a severe mental impairment and should have found Petitioner more limited in his use of his hands and fingers.

    *(i)*    *Standards of Law*

The pertinent case law distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).

As pointed out by Respondent, the ALJ must give specific, legitimate reasons for rejecting *controverted* medical opinions and may do so by summarizing the conflicting evidence in detail and interpreting it." Resp. Br., p. 11 (Dkt. 17) (emphasis added) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is *uncontradicted*. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 10**

> (ii) *Examining Psychologist*

A few days before the ALJ's hearing, Jonelle Simpson, Ph.D., a licensed psychologist, evaluated Petitioner, conducted several tests, and assessed a full scale IQ of 86, which is at the low average range of intellectual functioning. (AR 191). Petitioner asserts that there is "no question but that [Petitioner] has a severe mental impairment" based on Dr. Simpson's evaluation. He argues the evaluation demonstrates that his ADHD symptoms significantly interfered with his ability to carry out activities of daily living, organization, and planning. Pet.'s Br., p. 6 (Dkt. 16). A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits [the Petitioner's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (citation omitted).

The ALJ credited Dr. Simpson's finding that Petitioner "had suffered from attention deficit hyperactivity disorder for most of his life," but noted that "despite this condition, [Petitioner] was able to maintain employment for 25 years." (AR 18). The ALJ found that Petitioner "has some mild mental problems, but there are not problems that cause significant limitation in the [Petitioner's] ability to perform basic work activities." *Id.* However, the ALJ gave no reason, other than Petitioner's ability to maintain employment (which involved manual labor and heavy lifting), for disregarding Dr. Simpson's report that Petitioner's "diagnosis of ADHD represents fairly severe symptoms of ADHD which interfere with [Petitioner's] ability to successfully carry out activities of daily living" or her opinion that "it is not expected that [P]etitioner can stay on task without direct supervision." AR 194.

The opinion of an examining physician such as Dr. Simpson is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 11**

1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. Even if the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ's single reason for rejecting Dr. Simpson's assessment, i.e., that Petitioner had 25 years of work history, does not amount to a substantial evidence sufficient to reject Dr. Simpson's findings.

The Court is aware that the nonexamining medical expert, Dr. Myers, heard a summary of Dr. Simpson's report at the hearing, AR 29. However, Dr. Myers did not discuss Dr. Simpson's report or opine about what limitations may be imposed by Petitioner's ADHD.[1] Thus, Dr. Simpson's opinion is uncontroverted in the record. Additionally, other information in the record demonstrates that Petitioner sought treatment for his mental condition. *See* AR 212 (March 1, 2008 report of Petitioner's visit to Eric Schubert, P.A., where Petitioner discusses his difficulties due to his inability to concentrate).

Significantly, Dr. Simpson stated that Petitioner is "not a good candidate for learning new tasks without intensive training given his markedly low abilities to process and retain information," and that "[o]ccupational re-training is going to pose some significant challenges given this man's combined IQ, learning disabilities/limitations," and his ADHD diagnosis. AR

---

[1] Respondent's brief mistakenly states that Dr. Myers "opined that Petitioner's cognitive problems 'were evident at a very young age,' as he repeated the first grade and had special education throughout his school years." Resp. Mem., p. 11 (Dkt. 17). The statements Respondent attributes to Dr. Myers were actually those made by Dr. Simpson in her report that were read into the record at the hearing by Petitioner's attorney. *See* AR 28. There is no testimony by Dr. Myers as to the severity of Petitioner's mental impairments.

**MEMORANDUM DECISION AND ORDER - 12**

194. Although Dr. Simpson's report does not establish absolutely that Petitioner suffers from a severe mental condition, it was uncontroverted in the record. The ALJ did not provide clear and convincing reasons, or even specific and legitimate reasons supported by substantial evidence in the record, to reject it. Accordingly, this case will be remanded for reconsideration of the information provided by Dr. Simpson.

*(iii)  Treating and Examining Doctors Opinions on Petitioner's Abilities*

The ALJ determined that Petitioner has the residual functional capacity ("RFC") to perform a full range of light work, except for limitations with frequent handling and fingering. (AR 18). Petitioner argues that the ALJ's RFC limitation to "frequent" handling/fingering is not supported by substantial record evidence and asserts that he is capable of only sedentary work. Pet.'s Br., pp. 6, 8 (Dkt. 16). An RFC is the most a person can do considering his impairments and litigations. *See* SSR 96-8p (1996), 1996 WL 374184, at *2.

On January 19, 2008, Rafael Beier, D.O., an examining physician, conducted a consultative examination and determined that Petitioner would have difficulty working at his previous occupation; however, "due to his young age and likable personality, with proper Vocational Rehabilitation and proper motivation will very likely, though, be able to do many other types of work that are more sedentary." (AR 167). Dr. Beier did not opine that Petitioner was limited to sedentary work, but rather that he would need to be more selective in the types of occupations he chooses for the future, looking for work that is more sedentary than his previous occupation, where he had to do a lot of heavy lifting using his hands and arms. *See id.*[2]

---

[2] *See also* SSR 96-5, 1996 WL 374183, at *5, (explaining that "[f]rom time-to-time, medical sources may provide opinions that an individual is limited to 'sedentary work,' 'sedentary activity,' 'light work,' or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability," and "[a]djudicators must not assume that a medical source using terms such as 'sedentary' and

**MEMORANDUM DECISION AND ORDER - 13**

Peter C. Jones, M.D., a treating physician, wrote a letter describing Petitioner's bilateral carpal tunnel syndrome and treatment and opined that it would be "preferable" for Petitioner "rather than re-enter the logging field to enter another occupation, which does not require *repetitive* use of his hands." AR 207 (emphasis added). Neither Dr. Jones nor Dr. Beier addressed whether Petitioner was so limited that he could not engage in frequent fingering or handling. The Social Security Administration has defined the term "frequent" "as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, *6 (1983). Frequent use of fingers or hands does not necessarily involve a repetitive action. Thus, the opinions of Dr. Jones and Dr. Beier do not specifically contradict the ALJ's findings on the frequency of movement of which Petitioner is capable.

Additionally, the medical expert at the hearing testified that Petitioner can do light level work with some manipulative limitations on handling and fingering. AR 31. This finding is supported by a physical residual functional capacity assessment completed by Leslie Arnold, M.D., who found that Petitioner could occasionally lift 20 pounds, frequently lift 10 pounds, stand about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, that he was unlimited in his ability to push and/or pull, but limited to frequent handling/fingering bilaterally (AR 179, 181). Thomas Coolidge, M.D., also found that Petitioner is limited to "frequent" handling and fingering. AR 181, 186. These nonexamining opinions provide sufficient evidentiary support for the ALJ's decision upon the Petitioner's RFC where there is not an

---

'light' is aware of our definitions of these terms" because "[t]he judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability").

uncontroverted treating or examining physician's diagnosis undermining the ALJ's findings and conclusions. In this regard, the Court has concluded that the statements of Dr. Jones and Dr. Beier as to Petitioner's limitations can be read consistently with the ALJ's findings. Even though they could also be interpreted in a different manner, the Court will not substitute its judgment for that of the ALJ.

        3.      <u>Residual Functional Capacity Assessment & Vocational Expert Testimony</u>

As explained above, the ALJ appropriately considered the medical testimony in making his RFC assessment. However, because an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'," the ALJ may need to reconsider the RFC depending on his treatment of the findings and opinions of Dr. Simpson as to Petitioner's alleged mental impairments. This may result in a need for a vocational expert's testimony, as Petitioner argues should have been used by the ALJ in determining whether there are jobs that exist in significant numbers in the national economy that Petitioner can perform. The Court need not address that issue as the RFC and Petitioner's non-exertional limitations must be reconsidered on remand in any event.[3]

---

[3] "The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.'" *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986)). "But the grids are inapplicable '[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Id.* (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**MEMORANDUM DECISION AND ORDER - 15**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his credibility conclusions, despite the fact that such evidence is susceptible to a different interpretation.  However, the ALJ did not provide sufficient reasons for rejecting certain of the examining psychologist's uncontroverted findings and opinions.  For this reason alone, this action is remanded to the Commissioner to reconsider the evidence as to Petitioner's mental condition and, in turn, determine its effect, if any, on Petitioner's disability determination.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **September 30, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge